Good morning, Your Honors. I'm Mayor Ashley. I'm from Helena. I'm a CJA panel attorney. I represent Mr. Hamilton in this particular case. I have alleged in my brief that there are three alleged errors in this particular case. And while one of them might be viewed as harmless, when you put the three together, I believe it resulted in a finding of guilt that cannot stand. We have three, as I say, three errors here. The first one, and probably the most egregious one, was the refusal of the court to allow the testimony of a tribal police officer. The second one is the disallowance of the doctor who examined the victim in this particular case to enlarge on her medical record that indicated that the victim on a previous occasion had made a statement regarding another assault that was questionable. And the third error is the refusal of the trial court to allow her lesser-included instruction. As I say, you might view particularly the latter two as harmless. But in the entire context, I believe that they resulted in a guilty verdict in this case. Well, let's take the — Counsel, let's take your first one where you say the police officer should have been allowed to testify. What he would say would be hearsay. And the person who he said said it wouldn't come to court. So that's a problem for you. Yes. We — what happened, Judge, is the victim's mother was living with my client's brother, a man by the name of Jason. We found out shortly before trial, quite frankly, that Jason, at some time after the occurrence here, that Jason approached a police officer he knew. They were friends. He was, according to the police officer, very distraught, was crying and so forth. And he told the police officer that the victim had told him within the past few days that she told her mother that my client assaulted her because her mother wasn't paying any attention to her. And we made an attempt, several attempts, in fact, to get Jason before the court. And he didn't want to come. He did not want to come, Your Honor. He was, in point of fact, on the day of the trial, he was in a hotel only two blocks away. My investigator and his mother went and tried to attempt to get him to appear. And he refused. So, obviously, and the trial courts have found — I mean, why couldn't your investigator, if you're — are you telling us that your investigator had face-to-face contact with Jason? He did not. Okay. They were in the — they contacted him in his room, the mother called him, and asked him to come down, and he said, I'm not going to do it. Well, why couldn't the investigator have gone up with a subpoena? He tried, Your Honor. The — the — Jason would not answer the — would not answer the door. In point of fact, there was some indication that the investigator — I mean, not the investigator — Jason had contacted one of the tribal police officers who was testifying for the government, and said, do I have to answer the door? And he was told no. And that's why he didn't — so, clearly, he was unavailable. And so then we — we attempted to — to put the police officer on. The — the key here is that Crawford rejected the — the indicia of reliability and the particularized indicia of reliability and the firmly rooted exceptions as far as testimonial evidence was concerned. Our argument here is that this is non-testimonial evidence. If you — if you view the totality of the circumstances — Does offering Jason's statement invoke the confrontation? I'm sorry, Your Honor. Does offering Jason's statement invoke the confrontation clause in the way Crawford does? Right. I mean, are you trying to say that Crawford somehow writes out the — the reliability part of Rule 807? Well, what I'm saying, Your Honor, is that this is non-testimonial evidence, and, therefore, it doesn't require the indicia of reliability. Why isn't it testimonial? Well, because it is not a statement that we've made, as for an example under deposition. It's not an affidavit. It's clearly in — obviously, in my opinion, it's non-testimonial, Your Honor, or not testimonial. I'm sorry. The — and I think the key to this situation is that this was a statement, as I said, that was made to a police officer, and it was not made with the idea that it was ever going to be made part of a criminal trial. The government also, as far as that statement was concerned, they leaned on the notice requirement. They said that we should have let them know that the police officer was going to testify and what he was going to testify to. We — this requirement is satisfied if the proponent, without fault in failing to give the notice, and there is time for the other side to prepare. We — the trial started on Monday. We heard about the police officer's fight. On Thursday, my investigator finally was put in touch with the police officer. We sent a subpoena out there across the state to Wolf Point to have somebody serve him. They were unable to do so. They tried to serve him a couple of times. We assumed correctly that he was on his way with the victim and his girlfriend, the victim's mother, to Great Falls, which is exactly where he was. So after he got to Great Falls, of course, we made the various attempts to get him served and were unsuccessful. The — I submit that the government could have easily — I mean, the court could have easily told both sides to meet with Jason and question him because the trial ended after the first day. We concluded, I believe, about 4 or 4.30, something like that. There was ample opportunity to say, okay, prosecution, defense, sit down with him, question him, and defense, if you — after that, you want to put him on tomorrow morning, we'll do it. That was not done. We basically were forced to rest at that point. Now, the other question is the — I attempted the doctor who examined the victim several days after the alleged incident, had examined her, I believe it was four years earlier, and had made a notation in her report that the girl had said that perhaps she had been inappropriately touched by her father on a previous occasion. Who was the defendant's brother? No. No. No, it's not — that's not true. Her father was not in the picture anymore, Your Honor. He had moved from the reservation. Four years earlier, as I say, they examined the girl, and during the examination, she made that statement to the doctor that maybe my — maybe my father touched me. We were not trying to indicate in any manner that that was true, only the fact that she had made that particular statement. And the — I have trouble finding that's relevant at all. The doctor's statement? Right. Relevant only as far as the fact that she had made the statement that somebody else had, on a previous occasion, had inappropriately touched her. But it could be true. Pardon me, Your Honor? It could be true. Certainly. Certainly. But if she had made that statement previously about somebody else, and nothing had been done about it, then we have a question of reliability of the previous statement, Your Honor. The government objected to this on the basis of Rule 412. That's all they said, Rule 412, Your Honor. And that — Rule 412 is a rape shield. Well, it's more than that. It's any sexual behaviors or not. Well, it's true, Your Honor. True, Your Honor. But it's — it's to protect a person from humiliation, for instance, in a rape trial. It's to protect a — I suppose you would say that in this case, it was intended to protect the witness, although it was not prior sexual conduct on her part. Well, certainly if she was inappropriately touched by someone in a nonconsensual manner, that type of conduct would fall under 412, would it not? I disagree, Your Honor. No. I think that it could have been perhaps kept out in some other manner, but certainly not with Rule 412. I rule — I read Rule 412 as — as what the case law and what Congress has said is basically a rape shield to prevent a parade of witnesses coming through and testifying that we've had sexual contact with this person before. I believe that's the purpose of it, Your Honor. And then the — the final one was the — we offered the lesser-included instruction of sexual contact, and the judge refused that. The — Well, was there any evidence at all that would support the lesser-included? Well, the judge rejected that argument, Your Honor, on the basis that the two — the two instructions were exactly the same. He said that what is missing here is any evidence that the contact occurred through the clothing, which is an element of — of sexual contact. It's not an element of sexual — sexual contact can be — But what I'm asking you is, was there any evidence in this trial that — that there was possibly contact through clothing? No, Your Honor. And I did not intend to argue that. So what's the point of all this, then? Pardon me, Your Honor? What's the point of all that? Of the lesser-included? Yeah. Well, I felt that — that what all of the evidence had shown was that there was a possibility that the — the actions that occurred, if they did indeed occur, were only sexual contact, not sexual — not the sexual contact that the government was attempting to prove. It was something less than that, if indeed it occurred, Your Honor. But what — but was there evidence to support contact through clothing? I'm sorry, Your Honor. Was there evidence to support a finding that contact was made through clothing? Oh, there was not, Your Honor. So either he did it or he didn't. And if he did it, it was with direct contact. Yes, Your Honor. All right. Third time, Your Honor. You're getting lots of experience today. I get to know you pretty well, Judge. I'll just touch briefly on the points made by Mr. Ashley. As far as the hearsay problem with the brother, there's no question that if it could come in at all, it had to come in through the brother. It's impeachment of the little girl in terms of her accusation that she'd made it up or whatever. It could come in through somebody that the brother had talked to. And therefore, there was no error at all in the judge refusing to keep the defense from calling the police officer to testify what the brother would say about what the little girl said to him. As Your Honor pointed out, it's not a confrontation clause problem, and the confrontation clause doesn't impact the reliability of evidence, the rules of hearsay anyway. You still have to have an admissible piece of evidence to impeach or to confront a witness. With regard to the prior assault, I think, Judge Fletcher, you made a good point. How could it be relevant? Because it might have been true. Even if you get back to the whole thing about the statement the little girl made when she was four, four years prior to this incident that her father may have touched her, we don't know whether it was true. We don't know the context in which, you know, the statement was made. And to just leave it out there, and as I point out in my brief, to try to lay a series of inferences. Well, she made that, and then the government didn't prosecute the father. Therefore, it must not be true. Therefore, she's a liar. A string of totally improper inferences, and therefore, that was also properly excluded. And finally, the lesser-included offense. Mr. Ashley has conceded that there was no basis for a lesser-included offense. It's like saying my entire defense was alibi, but I think I'm deserving of a self-defense instruction. I mean, you have to have some basis for that to go in. You can't – everybody in the world who wants a sympathetic jury could probably say in a fraud case, for example, where the threshold is over 1,000 or under 1,000, and there's no question that, you know, more than 1,000 was stolen, to throw a lesser- included in there in hopes that the jury will say, you know, really nice guy, let's give him the misdemeanor instead. That's just not the way the justice system works, and it shouldn't have worked that way this time. That's all I have, Your Honors, unless you have questions. Thank you. All right. Nothing further. All right. This is the end of a long week, and the Court will adjourn.
judges: B. Fletcher, Pregerson, Selna